# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHARLES HUDSON, | ) |
| Plaintiff, | ) |
| v. | ) No. 14-CV-06267 |
| CITY OF CHICAGO, et al. | ) Judge John J. Tharp, Jr. |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The City of Chicago, Officer Brian Murphy, and Officer Nick Linas have moved for summary judgment on Charles Hudson's claims of false arrest, malicious prosecution, intentional infliction of emotional distress, and respondeat superior. Most of the arguments turn on whether the officers had probable cause to arrest Hudson. Numerous disputes of material fact, however, exist between the parties, including when Hudson was arrested, how he was arrested, what happened before he was arrested, and what happened after he was arrested. The officers have therefore failed to demonstrate at this point that they had probable cause at the time of Hudson's arrest. Accordingly, and as explained in more detail below, defendants' motion for summary judgment is denied in its entirety.

## BACKGROUND

Sometime on August 27, 2012, plaintiff Charles Hudson was driving a red van on Lawrence Avenue in Chicago. *See* Def.'s Statement of Facts ("DSOF") ¶ 7, ¶ 14, ECF No. 43. Hudson, who had previously been convicted of a felony, worked as security at a bar. He maintains that he was driving to a police station to turn in a gun that had been confiscated the evening before from a patron at the bar. *See* Hudson Dep. 16:17-18, 31:19-48:11; 53:10-23 July 17, 2015, ECF No. 47 Ex. 5. Hudson pulled over to the curb, but the parties dispute whether he

did so on his own or whether he was pulled over by the defendants, Chicago police officers Nick Linas and Brian Murphy. *Compare* Hudson Dep. 57:12 – 59:4 (Hudson pulled over in response to flashing lights); Nash Dep. 31:16-22 Sept. 4, 2015; ECF No. 47 Ex. 3 (non-defendant officer on the scene testifying lights and sirens were activated in order to "curb" Hudson's vehicle) *with* Linas Dep. 45:17-47:10 Feb. 11, 2016; ECF. No 47 Ex. 7 (Hudson parked his vehicle by the curb without lights or sirens being used). Linas and Murphy were actively seeking a black man driving a red van (whether they knew Hudson's name or other information is a matter of dispute) because they had received a tip that such a man was selling a gun. *See* DSOF ¶ 12; Prelim. Hr'g Tr. 34:12-19 Sept. 24, 2012, ECF No. 47 Ex. 1.

After Hudson's van was stopped, or encountered, by the side of the road, the parties agree that Linas and Murphy approached Hudson's van and Hudson was quickly removed from the vehicle. *See* Pl.'s Statement of Facts ("PSOF") ¶ 4, ECF No. 47 Ex. 8. The manner in which Hudson was removed (physically or as a result of verbal prompting) is disputed. Hudson testified that he was physically removed, by force ("snatched"), from his car by Linas and handcuffed. *See* Hudson Dep. 61:20-62:4. Linas, on the other hand, testified that he only "verbally" ordered Hudson out of the car. Linas Dep. 33:5-14.

Hudson was then handcuffed. *See* DSOF ¶ 19. After he was handcuffed, Linas had Hudson lie on his stomach in the street for some period of time (how long is disputed). *See* Linas Dep. 50:18-22. At some point (the timing being disputed), Murphy searched the van, without Hudson's consent or a search warrant, and discovered a handgun in a black bag. Murphy has consistently testified that he saw the gun in an open bag between the driver and passenger seats when he approached the vehicle (contemporaneous with Linas's removal of Hudson from the vehicle). *See* Murphy Dep. 47:2-48:3 Feb. 11, 2016, ECF No. 47 Ex. 6. Hudson has consistently

testified that the gun was in a zipped bag underneath the back seat of the van and was not discovered until after he had been arrested. *See* Hudson Dep. 49:21-51:3. The defendants have conceded for the purposes of this motion that the gun was not in plain view. *See* Def.'s Mem. at 6 n. 1, ECF No. 41.

Hudson, who has previously been convicted of a felony, was charged later that day with unauthorized use of a weapon by a felon in violation of 720 ILCS 5/24-1.1-A. *See* Criminal Compl., ECF No. 42, Ex F. Hudson was unable to post bond, so he remained in jail until the criminal case was dropped, some 16 months later, on December 12, 2013 following a state court judge's decision to quash the arrest and suppress the evidence from the stop. *See* Answer ¶ 28-29, ECF No. 14; Hudson Dep. 72:3-19.[1] On August 14, 2014, Hudson filed this lawsuit for false arrest, malicious prosecution, and the intentional infliction of emotional distress. The defendants have moved for summary judgment as to all counts.

## DISCUSSION

Under Rule 56, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). The Court is mindful of the Seventh Circuit's teaching that "multiple versions of the facts increase the chances that at least one of those conflicting facts will be material to the outcome of the case," rendering summary judgment inappropriate. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 754 (7th Cir. 2006). The Court views the facts in the light most

---

[1] Hudson does not argue that the defendants are collaterally estopped from asserting a defense that his arrest was lawful, presumably because the defendants were not parties to the criminal case against Hudson and there was no privity between them and the state of Illinois. *See Kraushaar v. Flanigan,* 45 F.3d 1040, 1050 (7th Cir. 1995); *Kunzelman v. Thompson,* 799 F.2d 1172, 1178 (7th Cir. 1986).

favorable to Hudson (the non-movant) and draws all reasonable inferences in his favor at this stage. *See id.*

The defendants make three arguments as to why summary judgment is appropriate in this case. First, they argue the false arrest and malicious prosecution claims fail because the officers had probable cause to arrest and charge Hudson. Second, they argue Hudson has alleged insufficiently outrageous conduct and has insufficient damages to support a claim of intentional infliction of emotional distress. Third, they argue the officers are entitled to qualified immunity. The defendants concede that liability for the city is determined by whether the officers are liable, so only the liability of the individual officers is discussed below. *See* Def.'s Mem. at 12, ECF No. 42.

**A. Probable Cause**

The United States Constitution requires that no person be "unreasonably" seized without probable cause. U.S. Const. Amend. IV. Thus, when an officer is accused under 42 U.S.C. § 1983 of having violated a citizen's Fourth Amendment rights by falsely arresting him, the issue is whether the officer had probable cause to make the arrest. *See Gutierrez v. Kermon*, 722 F.3d 1003, 1007 n.1 (7th Cir. 2013). An officer has probable cause if "the facts and circumstances within [the arresting officer's] knowledge and of which [he] has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense." *Anderer v. Jones*, 385 F.3d 1043, 1049 (7th Cir. 2004). Probable cause requires more than "bare suspicion," although it demands less than probability. *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000). Probable cause is measured at the time the seizure occurred, *United States v. Weir*, 703 F.3d 1102, 1104 (7th Cir. 2013), or at the time the charges were levied, *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011).

### 1. False Arrest

The defendants' primary argument with regard to the arrest is that because a gun was found in the van, and Hudson is a felon, the officers must have had probable cause at all times during their encounter to arrest him for being a felon in possession of a weapon. *See* Def.'s Mem. at 4. This argument fails because an officer's later knowledge is not attributed retroactively. All that matters for determining whether the officers had probable cause is what the officers knew when they arrested Hudson. Hudson was arrested when "a reasonable person in [Hudson's] position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Abbott v. Sangamon County*, 705 F.3d 706, 719 (7th Cir. 2013). For example, an application of physical force is sufficient for a person to be seized under the meaning of the Fourth Amendment. *Cal. v. Hodari D.*, 499 U.S. 621, 624 (1991).

There is, at the very least, a dispute of material fact as to when Hudson was arrested. Somewhere between 9:45 and 10:00 a.m., Hudson testified, his car was curbed by two police cars while he was driving to the police station and he was forcibly removed from his car by Linas and handcuffed. *See* Hudson Dep. 61:20-62:4. Hudson further testified that Linas was kneeling on him while Murphy searched the van. *See id.* at 74:9-15. Linas, on the other hand, testified that he only "verbally" ordered Hudson out of the car. Linas Dep. 33:5-14. If Hudson's version of his encounter with the defendants is true, a jury could reasonably infer that he had been arrested before the van was ever searched. A reasonable person who has been physically removed from his vehicle, forced to the ground, handcuffed, and knelt on by an officer would reasonably believe that he was being arrested; this is surely a degree of restraint consistent with a formal arrest. Any gun located *after* these events would be immaterial to the probable cause inquiry

because the arresting officer could not have had knowledge of the gun at the moment of arrest. The defendants have conceded for the purpose of the motion that the gun was not in plain view, so it must be assumed for purposes of this motion that Linas and Murphy arrested Hudson before any gun had been located in the van.

Did they have probable cause to arrest Hudson before they found the gun? That depends on what else the officers knew about Hudson and the gun, but those facts are also disputed. The parties appear to agree that before he left to drive to the police station, Hudson contacted a friend, who (unbeknownst to Hudson) happened to be a confidential informant for the police. *See* Hudson Dep. 53:5-54:12. This friend had agreed to work as a confidential informant after drugs had been found at his residence; Linas had agreed not to arrest him for the drugs in exchange for information leading to "someone who had guns or drugs." Linas Dep. 11:4-19:15. Hudson contacted this friend because he wanted the friend to turn the gun into the police for him. Hudson Dep. 53:5-54:12. Hudson was worried about walking into a police station with a gun, because he is a felon. *Id.* According to Linas, Hudson's friend called Linas and reported that someone was trying to sell him a firearm. Linas Dep. 22:16-23.

What exactly the confidential informant told Linas is material and in dispute. Linas testified in his deposition for this case that he received Charles Hudson's name, rather than just the description of a black male driving a red van, from his informant. *See* Linas Dep. 25:17-22 Feb. 11, 2016. However, Hudson points out that Linas never stated he had received Hudson's name in any document created following the arrest. Furthermore, at a pretrial hearing in the state criminal case, Linas was asked "what information was relayed to you" and Linas responded only "a black male driving in a red minivan was attempting to sell a gun." *See* Hr'g Tr. 3:4-11 Nov. 11, 2013. Linas responded with only that information even though he later acknowledged in his

deposition that he knew corroborating information would be used by the court and that a name being given would be "an important part of your investigation." Linas Dep. 28:3-18 Feb. 11, 2016.[2]

Of course, even if the officers knew Hudson's name, they never saw him attempt to sell the gun such that he would have committed or been in the process of committing a crime. Rather, the information they (possibly) possessed was that he was in possession of a gun; that would only be a crime if they knew Hudson was a felon or otherwise did not possess the proper license. In an attempt to show that the officers had information about Hudson's identity and criminal record, the defendants produced a list of the times and dates Hudson's file was accessed on the police department's I-CLEAR system. However, the first entry suggests Hudson's name was queried at 11:03 a.m. on the day in question. *See* ECF No. 52 Ex. B. The first lookup by an officer involved in the case was by Officer Nash at 11:19 a.m., and the first lookup by Linas was at 2:06 p.m. *See id*. This evidence might resolve the issue, but for the fact that the time of the incident is a matter of dispute. Both Hudson and the informant testified that the arrest took place around 10 a.m., an hour ***before*** anyone looked up Hudson's name in the I-CLEAR system. *See* Hudson Dep. 68:7-10, C.I. Dep. 57:19-58:13 Aug. 31, 2015, ECF No. 42 Ex. C. Nash, furthermore, testified that he was not given any information regarding Hudson's appearance before the arrest, so it seems unlikely he had seen his mugshot or other information in I-CLEAR before the arrest. *See* Nash Dep. 10:2-11:2. Linas, on the other hand, testified clearly that the arrest happened at noon—that is, an hour ***after*** the information had been pulled. *See* Linas Dep.

---

[2] This is impeachment by omission, which bears on Linas's credibility. In opposing summary judgment, a non-movant cannot rely solely on attacks on the credibility of witnesses supporting the moving party. *See, e.g., Morgan v. SVT, LLC*, 724 F.3d 990, 999 (7th Cir. 2013); *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). But as discussed below, Hudson also relies on his own contrary version of the events, and support from the CI, to establish the timing of his encounter with the defendants.

97:15-23. Tellingly, neither Hudson nor the defendants has contended that their respective claim as to the time that Hudson was seized is undisputed.

The parties also dispute whether the defendants could reasonably rely on the information provided by the informant. Hudson maintains that there is no evidence that the officers corroborated the information provided and had no information relevant to assessing the informant's credibility or reliability. At a criminal hearing in Hudson's state court case, Linas testified that he could not recall ever receiving information from the informant before and that this may have been the first time the individual had ever provided information to the police. *See* Hr'g Tr. 50:13-51:4 Nov. 7, 2013. Linas had previously found drugs at the informant's home, and had agreed not to arrest him as long as the informant provided information that led to other arrests for guns or drugs. *See* Linas Dep. 11:4-14:14. Thus, Hudson maintains, the only undisputed information available to Linas at the time of the arrest was that he had located a black male, driving a red van, and that earlier that day an individual trying to avoid prosecution for drug possession, whose reliability was unknown, had told police that there was a black man driving a red van who had proposed to sell the informant a handgun. That is not the only spin that could be put on the facts relating to the informant (who was on the phone with Linas and guided him to Hudson's van, knowing that if the officers didn't find a gun his days as an informant were probably numbered). But on summary judgment, the inferences must be drawn in favor of the non-movant; construing these facts in the light most favorable to Hudson, this information from a self-interested and untested informant was not sufficiently trustworthy to provide probable cause on its own. *See United States v. McMillian,* 786 F.3d 630, 639 (7th Cir. 2015) (informant's allegations insufficient to support finding of probable cause where police obtain no corroboration and have no information concerning informant's credibility or

reliability); *United States v. Peck*, 317 F.3d 754, 757 (7th Cir. 2003) (uncorroborated vague statement by confidential informant insufficient).

As an alternative argument, the defendants also maintain that they "had reasonable suspicion necessary to conduct a *Terry* stop of Plaintiff and a protective search of the van." Reply at 4. The defendants have forfeited this argument for purposes of their summary judgment motion. The argument is entirely undeveloped; it consists of a single sentence in the opening brief set forth in the context of the qualified immunity argument and a single sentence in the reply brief in the context of the probable cause argument. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived."). The defendants did not even provide a full citation to *Terry,* much less any legal analysis of whether their stop of Hudson (which by his reckoning lasted some over half an hour, *see* Hudson Dep. 67:1-4) satisfied the requirements for the sort of brief investigatory detentions *Terry* authorizes. The defendants did, it is true, seek to invoke *Michigan v. Long* as authority for their search of Hudson's van, but that case depends for its relevance on an argument that the police legitimately stopped Hudson before they searched the passenger compartment of the van.[3] Here, the

---

[3] The officers' reliance on *Michigan v. Long* is further misplaced given that the defendants have conceded the gun was not in plain view and, crediting Hudson's account as the Court must on summary judgment, Hudson had already been arrested by the time of the search. *Long* held "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous **and the suspect may gain immediate control of weapons**." *Mich. v. Long*, 463 U.S. 1032, 1049 (1983) (emphasis added). In *Long*, the defendant was visible intoxicated, unrestrained, and about to reenter his vehicle. Here (crediting his account), Hudson was outnumbered, on the ground, handcuffed, and being knelt upon by one of the officers. Further, at least one officer understood the plan was to arrest Hudson "on-site" (it is unclear if this is a transcription error and should read "on sight"), so it is unlikely Hudson was going to be permitted to reenter his vehicle at any point, and certainly not at the time of the search. *See* Nash Dep. 8:22-9:5 Sept. 4, 2015. Thus, Murphy's search of the van was not reasonable or lawful

defendants have not established, as a matter of law, that they had a legitimate basis to stop Hudson because there is a material fact dispute as to probable cause and because they did not develop a *Terry* stop argument. In any event, even if the stop is characterized not as an arrest but a *Terry* stop, a trial would be necessary given the disputes about the nature and duration of Hudson's detention during the stop. *See United States v. Sharpe*, 470 U.S. 675, 685 (1985) ("if an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop"); *United States v. Leo*, 792 F.3d 742, 751 (7th Cir. 2015) ("A stop that is too prolonged becomes a de facto arrest that must be based on probable cause.") (internal quotation marks omitted).[4]

### 2. Malicious Prosecution

The defendants' only objection to the malicious prosecution count is the purported lack of probable cause to arrest. *See* Def.'s Mem. at 6.[5] At this time, there are a number of disputes of material fact that preclude summary judgment. It is unclear when the incident itself took place, when within the incident itself Hudson can be considered to have been arrested, what

---

because Hudson could not gain immediate control of any weapon in the van. *See Arizona v. Gant*, 556 U.S. 332, 343 (2009) (search of vehicle incident to arrest of occupant is permissible "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.").

[4] The defendants also argue that the legality of their search of Hudson's van is irrelevant because the exclusionary rule does not apply in the context of civil litigation. The Seventh Circuit has so held, but in a non-precedential order. *Vaughn v. Chapman*, 662 Fed. App'x 464, 467 (7th Cir. 2016) ("The exclusionary rule does not apply in a § 1983 suit against police officers.") (citing cases). The question need not be resolved here, because the relevant question in light of the disputed issues of fact is whether the police had probable cause to arrest Hudson before they found the gun, not after.

[5] Curiously, the defendants do not reprise their arguments about the lawfulness of the search or the in applicability of the exclusionary rule to contend that there was probable cause to charge Hudson later that day based on discovery of the gun and his criminal background. Indeed, the defendants do not even address the malicious prosecution claim in their reply brief. However baffling, their omission to do so requires denial of their motion for summary judgment as to the malicious prosecution claim.

information the officers had at that time, and whether the informant's information could be considered reliable in any event. Therefore, the defendants' motion for summary judgment is denied as to the false arrest and malicious prosecution claims.

### B. Intentional Infliction of Emotional Distress

Illinois state law claims for the intentional infliction of emotional distress require three showings: "(1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress and (3) the conduct must in fact cause severe emotional distress." *Lewis v. Sch. Dist. # 70*, 523 F.3d 730, 746 (7th Cir. 2008). The defendants contest the first and third prongs of this analysis. First, they claim that because their conduct was justified, it was not extreme and outrageous. Second, they contend Hudson's injuries are insufficiently severe to support liability.

The Supreme Court of Illinois has listed a number of factors that can be used to determine whether particular conduct was objectively extreme and outrageous: "the degree of power or authority which a defendant has over a plaintiff; whether the defendant reasonably believed that his objective was legitimate; and whether the plaintiff is particularly susceptible to emotional distress because of some physical or mental condition or peculiarity." *Id*. at 747. The defendants maintain that they were "justified" in arresting Hudson but that depends on the same fact issues that control whether they arrested Hudson without probable cause. Several of the factual disputes above are material to this inquiry as well. For example, whether the officers "reasonably believed" their objective was legitimate depends a great deal on whether or not they knew Charles Hudson was a felon and whether or not they had already made the decision to arrest him before ever approaching Hudson's vehicle. If Murphy and Linas knew Hudson was a

felon before the encounter, they may have reasonably believed their arrest was legitimate. But if Linas and Murphy had determined in advance to arrest Hudson regardless of what they saw and did so immediately based merely on the tip of an untested and self-interested informant, they could not have reasonably believed their objective was legitimate. Police officers doubtless have a great degree of power and authority over ordinary citizens, both during the arrest and during court proceedings such as probable cause hearings. Construing the facts in the light most favorable to Hudson, a reasonable jury could find that the officers' intended to arrest Hudson first and to ask questions later; that conduct would appropriately be characterized as extreme and outrageous.

Second, the defendants contend Hudson has not proven that he actually suffered severe emotional distress. Hudson has testified his main harms were being in jail for over a year and nightmares stemming from an undescribed incident that occurred while he was in jail. *See* Hudson Dep. 79:12-83:7. Hudson says that the primary source of his distress was the fact that he "didn't do anything"; that he did not feel that he had committed a crime. Hudson Dep. at 81:1-19. But of course he did do something. Hudson does not dispute that he was in possession of a firearm when the defendants stopped him or that he had a prior felony conviction at the time. Whether or not the arrest was supported by probable cause turned not at all on whether Hudson was actually guilty of the crime of unlawfully possessing the handgun in his van, but rather on what the officers knew about his crime at the time they arrested him. One might expect an innocent man to be traumatized by an arrest for a crime he did not commit. The man arrested for a crime he did commit but who believes he should not have been because the police didn't play by the rules has a less compelling complaint—but not one that can be ignored as a matter of law. The defendants argue that Hudson didn't experience anything in jail that others incarcerated

there don't experience, but that ignores the fact that, if one credits his version of events, Hudson shouldn't have been in jail at all. Emotional distress is only actionable "where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 277, 798 N.E.2d 75, 84 (Ill. Sup. Ct. 2003). The intensity and duration of the distress are both relevant in determining its severity. *Id*. For example, distress about a pending criminal case and two days in custody may be insufficiently severe. *See Johnson v. Arroyo*, No. 09 C 1614, 2010 WL 1195330, at *4 (N.D. Ill. Mar. 22, 2010). In contrast, four months in a violent jail while sleeping on the floor may be sufficiently severe. *See Chagolla v. City of Chicago*, No. 07 C 4557, 2012 WL 403920, at *10 (N.D. Ill. Feb. 8, 2012). The Court finds that a reasonable jury could determine that almost 16 months of incarceration in a violent jail sufficient to induce nightmares years after the fact constitutes severe emotional distress. Defendants' motion for summary judgment is therefore denied as to the intentional infliction of emotional distress claim.

### C. Qualified Immunity

Finally, the defendants assert they are entitled to qualified immunity because they acted in conformity with established law. *See* Def.'s Mem. at 9. The defendants are entitled to qualified immunity if the plaintiff failed to make out a violation of a constitutional right or that right was not "clearly established" at the time of the misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The defendants reprise their argument that the officers had probable cause to arrest and therefore acted in conformity with the law. That argument is no more availing here than it was above. On the facts alleged and supported by Hudson, Linas arrested him on the basis only of a bare suspicion that he was in possession of a gun, without knowing whether or not that gun existed or whether it was illegal for Hudson to possess that gun. Summary judgment cannot

be granted where a qualified immunity claim rests on disputed facts. *See, e.g., White v. Gerardot*, 509 F.3d 829, 834 (7th Cir. 2007) The defendants do not make any argument that Hudson's Fourth Amendment right to be free from seizure without probable cause was not clearly established at the time of the arrest, and such a right is clearly established in any event. *See Biddle v. Martin*, 992 F.2d 673, 675 (7th Cir. 1993). Therefore, the motion for summary judgment on the basis of qualified immunity is denied.

\*       \*       \*

Because disputes of material fact preclude summary judgment on Hudson's claims and, when the facts are taken in the light most favorable to the non-movant, the officers are not entitled to qualified immunity, the defendants' motion for summary judgement is denied.

Dated: July 10, 2017

John J. Tharp, Jr.
United States District Judge